UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


D. MONTGOMERY,

        Plaintiff,                        Case No. 10-11729
                                            Honorable Julian Abele Cook, Jr

v

CITIMORTGAGE, INC., et al

        Defendants.

_____

FEDERAL HOME LOAN MORTGAGE CORP.,

        Plaintiff,                        Case No. 11-10406
                                            Honorable Julian Abele Cook, Jr.

v.

NINEVAH N. RUDOLPH, et al

        Defendants.

_____

ORDER

      On or about March 26, 2010, the *pro se* Plaintiff, D. Montgomery filed a lawsuit in the Oakland County Circuit Court of Michigan in which he seeks to obtain injunctive relief and $5,133,429 in damages against the Defendants under case number 10-11729.[1] In general, he

---

[1] The lawsuit, which was filed by Montgomery under case number 10-11729, will be identified hereinafter in this order as "Civil Action No. 1" for purposes of simplicity and clarity. The Defendants in this "Civil Action No. 1" are the Federal Home Loan Mortgage Corporation ("Freddie Mac"), CitiMortgage, ABN AMRO Mortgage Group, Inc., Evergreen Woods Condominium Association, Kramer-Triad Management Group, GTJ Consulting, LLC, Michael J. Kellum, and Ross Towing and Used Auto Parts.

1

accused them of engaging in unlawful, unfair, unconscionable or deceptive business practices, and wrongfully interfering with his right to occupy and/or enforce construction liens against two properties, both of which are located in Oakland County, Michigan.[2]  More specifically, it is Montgomery's contention that he (1) had been wrongfully locked out of a parcel, known hereinafter as the "Southfield Property" by the Defendants, (2) possessed valid construction liens against two properties that, in his opinion, are senior to the Defendants' mortgages, and (3) is entitled to more than five million dollars ($5,000,000) in damages from the Defendants. On April 28, 2010, Freddie Mac caused this lawsuit to be removed to the federal court.

Several months later, Freddie Mac, claiming to be the owner of the "Southfield Property" on the basis of its possession of a sheriff's deed, filed a complaint in the 46th District Court (Southfield, Michigan), seeking to terminate the tenancy of its occupants. On February 1, 2011, Montgomery, following a failed attempt by him to remove this controversy to a federal court, filed a complaint and counterclaim that closely mirrored the allegations in Civil Action No. 1. Thereafter, the Court, noting the similarity between these two proceedings, entered an order on February 15, 2011 which consolidated the Civil Actions Nos. 1 and 2.

The Court has now been asked by Montgomery to favorably consider his emergency motion

---

The lawsuit, which was filed by Freddie Mac under case number 11-10406, will be called "Civil Action No. 2" for purposes of simplicity and clarity . The named Defendants in this "Civil Action No. 2" are Ninevah N. Rudolp, "Mr. Occupant" (acknowledged by Montgomery to be him), and a "Mrs. Occupant."

[2]During all of the times that are relevant to this proceeding, Montgomery was a tenant in one of the two properties; namely, 24621 Evergreen Road in Southfield, Michigan ("Southfield Property").  The other parcel at issue is located at 6576 Stonebridge East. in West Bloomfield, Michigan ("West Bloomfield Property").

to stay the proceedings in the 46th District Court, and to consider his motion on an expedited basis because of a pending eviction hearing before that court. For the reasons stated below, his motion to expedite will be granted, but his emergency motion will be denied.

I.

In June of 2002, Ninevah Rudolph obtained a mortgage in the sum of $114,000.00 against the Southfield Property. According to Freddie Mac, the mortgage was assigned thereafter to the ABN AMRO Mortgage Group, Inc. ("ABN AMRO") which subsequently merged with CitiMortgage, Inc. Montgomery - presumably acting with the approval of Rudolph - occupied the "Southfield Property" as a tenant beginning in May of 2009. Montgomery claims that, after performing "emergency repairs" on the Southfield and West Bloomfield locations, he filed construction liens against the two properties in an effort to "secure" his labor charges.[3]

According to Freddie Mac, Rudolph defaulted on her mortgage when she failed to satisfy her financial obligations. As a consequence, Trott & Trott, P.C. commenced foreclosure proceedings on behalf of Freddie Mac against Rudolph in October 2009. Armed with a sheriff's deed that was acquired on January 5, 2010, Freddie Mac commenced termination of tenancy proceedings against Ninevah and the occupants of the Southfield Property (including Montgomery), claiming that all of them were wrongfully holding over in the property after the post-mortgage foreclosure sale redemption period had expired. However, Montgomery, in challenging Freddie Mac's claims, accuses the Defendants of conspiring to remove him from the "Southfield Property" by forcibly entering the premises while he was away from his home on a "personal business" trip in early March

---

[3] According to documentation attached to Montgomery's complaint in Civil Action No. 1, the construction liens are for $17,237.23 and $97,427.78 against the Southfield Property and the West Bloomfield Property; respectively.

of 2010, and, while therein, removing his personal belongings (including a motor vehicle) from the premises without a court order.[4]

## II.

In addressing Montgomery's emergency motion, the Court will abstain from addressing any of the issues that he have been raised by him on the basis of the ruling in *Younger v. Harris,* 401 U.S. 37 (1971). The *Younger* abstention doctrine counsels federal judges against presiding over cases where there is a pending state proceeding. *Moore v. Sims*, 442 U.S. 415, 423 (1979). *Younger* is rooted in notions of "comity," which has been defined as the "proper respect for state functions, a recognition . . . that the entire country is made up of a Union of separate state governments, and a . . . belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger* at 44. It reflects a strong policy against federal intervention into state proceedings "in the absence of great and immediate irreparable injury to the federal plaintiff." *Id*.; *See also, Fieger v. Cox*, 524 F.3d 770, 774 (6th Cir. 2008) ("federal injunctions against a state criminal law enforcement process could be issued only 'under extraordinary circumstances where the danger of irreparable loss is both great and immediate.'"). Although the *Younger* principle was initially applied to state criminal proceedings, the Supreme Court has since extended the reach of the doctrine fully to "civil proceedings in which important state interests are involved." *Id.*

Moreover, the Supreme Court has noted that while Congress had expressed a similar

---

[4]Montgomery attached a copy of the Southfield Police Department report that had been initiated by him and authored by officer Rolando Rivera to his complaint . This report characterized the removal of the contents from Montgomery's home as a "forced entry / burglary."

preference for comity through the Anti-Inunction Act, 28 U.S.C. § 2283, the holding in *Younger* was based on a separate "strong judicial policy" against federal interference with state proceedings. *Younger* at 43; *See also, Huffman v. Pursue, Ltd.,* 420 U.S. 592, 600-601 (1975) (reaffirming this principle in recognition that "interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections . . . .").

Thus, where a pending state case is "in aid of and closely related to criminal statutes," or implicates other vital state concerns or polices, the *Younger* doctrine presents a bar to federal intervention when the state proceeding provides the litigant with an adequate opportunity to raise constitutional challenges.[5] *Id*; *See also*, *Fieger, supra* ("[A] federal court should abstain from interfering in a state court action [when]: (1) . . . the underlying proceedings constitute an ongoing judicial proceeding, (2) . . . the proceedings implicate an important state interest, and (3) . . . there is an adequate opportunity in the state proceedings to raise a constitutional challenge.") (citing *Tindall v. Wayne County Friend of the Court,* 269 F.3d 533, 538 (6th Cir. 2001)).

Here, the Court concludes that all of the *Younger* factors exist here to prevent its intervention into the proceedings before the 46th District Court. First, there is an ongoing judicial proceeding in a state court. Second, the termination of tenancy proceedings implicate an important state interest. The underlying case involves the completion of foreclosure proceedings and landlord tenant issues, both of which vindicate an important state policy of enforcing property rights. *See., e.g. Doscher v. Meneifee Circuit Court,* 75 Fed. Appx. 996, 997 (6th Cir. 2003) (unpublished) (applying *Younger*

---

[5]There are three exceptions to the *Younger* abstention doctrine, none of which apply here, namely (1) bad faith prosecutions, (2) patently unconstitutional state laws, and (3) the absence of an adequate state forum in which to raise the constitutional issues.

abstention to ongoing foreclosure action pending in Kentucky state courts). And finally, the third factor – whether there is an adequate opportunity to raise a constitutional challenge before the state courts – is satisfied here. Although the state court proceeding involves only a landlord-tenant dispute, Montgomery has already presented his federal constitutional (and other) counterclaims to that judicial body. There has been no argument or evidence that the 46th District Court would be incapable of or forbidden from adjudicating those matters for procedural or other reasons.

As such, the Court concludes that the *Younger* abstention doctrine prevents its consideration of Montgomery's request for an injunction over the pending state claims.

III.

Therefore, for the reasons that have been stated above, Montgomery's motion to expedite consideration of his emergency motion will be granted. However, Montgomery's motion for an emergency stay of the proceedings in 46th District Court to terminate tenancy must be, and is denied.

To the extent that this order resolves Freddie Mac's requests in Civil Action No. 2 to transfer the case to this Court (Docket Entry No. 7), this motion is denied for mootness.

IT IS SO ORDERED.


Dated: March 8, 2011                         s/Julian Abele Cook, Jr.
       Detroit, Michigan                     JULIAN ABELE COOK, JR.
                                             United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participant D Montgomery on March 8, 2011:

**D Montgomery**
P O Box 441074
Detroit, MI 48244-1074

                                                 s/ Kay Doaks
                                                 Case Manager