UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D. MONTGOMERY,

        Plaintiff,

v.

CITIMORTGAGE, INC., ABN AMRO MORTGAGE GROUP, INC., EVERGREEN WOODS CONDOMINIUM ASSOCIATION, KRAMER-TRIAD MANAGEMENT GROUP, LLC, GTJ CONSULTING, LLC, ROSS TOWING AND USED AUTO PARTS, 24261 Evergreen Road Southfield MI, 6576 Stonebridge E. West Bloomfield MI, and FREDDIE MAC, MICHAEL E. KELLUM,

        Defendants.

Case No. 10-11729
Honorable Julian Abele Cook, Jr.

## ORDER

The *pro se* Plaintiff, D. Montgomery, filed this lawsuit in the Oakland County Circuit Court of Michigan in an effort to obtain injunctive relief and damages in excess of five-million ($5,000,000) against the Defendants[1] for, *inter alia*, (1) engaging in unconscionable, unlawful, unfair or deceptive business practices, and (2) wrongfully interfering with his right to occupy and/or enforce construction liens against two properties in Southfield and West Bloomfield Michigan. He claims to have been a rental tenant in one of the properties, commonly known as 24621 Evergreen Road in Southfield, Michigan ("Southfield property"). The other parcel at issue is commonly known as 6576 Stonebridge East. in West Bloomfield ("West Bloomfield property").

---

[1] The Defendants named in this lawsuit are the Federal Home Loan Mortgage Corporation ("Freddie Mac"), CitiMortgage ("CitiMortgage"), ABN AMRO Mortgage Group, Inc. ("ABN AMRO"), Evergreen Woods Condominium Association ("Evergreen Woods"), Kramer-Triad Management Group (" Kramer-Triad"), GTJ Consulting, LLC, Michael J. Kellum, and Ross Towing and Used Auto Parts.

On April 28, 2010, Freddie Mac caused the litigation to be removed to this federal court.

Subsequent to the commencement of this lawsuit, the parties filed the following motions, all of which are currently pending before the Court:

(1)     Montgomery's motion for sanctions against Evergreen Woods;

(2)     Montgomery's motion for summary judgment against Evergreen Woods;

(3)     Montgomery's motion to amend his complaint;

(4)     Motion by a non-party, U.S. Bank National Association, ("U.S. Bank") to intervene into this lawsuit;

(5)     Motion by three of the Defendants (Kramer-Triad, Evergreen Woods, and Michael Kellum) to dismiss this lawsuit; and

(6)     Motion by one of the Defendants (Freddie Mac) for an extension of time to file a responsive pleading.[2]

Each motion will be considered seriatim.

I.

Many of the relevant facts which arise from Montgomery's lawsuit have been articulated in previous orders by the Court, and are only repeated here as necessary. In June of 2002, Ninevah Rudolph ("Rudolph") took out a mortgage in the amount of $114,000.00 against the Southfield property. The mortgage was assigned to ABN AMRO which subsequently merged with CitiMortgage, Inc.

Montgomery, who claims to have been an occupant of the Southfield property as a tenant since May of 2009, proclaims that he performed "emergency repairs" at the Southfield and West Bloomfield properties. In an ostensible effort to protect his labors, he filed construction liens against

---

[2]This motion by Freddie Mac appears to be based on the litigation history and pleading schedule in a companion case, No. 11-10406, which has since been remanded to a state court. Therefore, it will be denied for reasons of mootness.

both of these parcels.[3]

The record in this case indicates that Rudolph defaulted on her mortgage against the Southfield property when she failed to make timely payments. Thereafter, foreclosure proceedings relating to that parcel were initiated in October of 2009. Acting upon the validity of a sheriff's sale on January 5, 2010, Freddie Mac purchased the Southfield property and commenced eviction proceedings against Rudolph and all of its occupants who had allegedly remained without authority after the expiration of the redemption period.

In his complaint, Montgomery accuses the Defendants of conspiring to illegally remove him from the Southfield property when they (1) forcibly entered the premises while he was out of town on a "personal business" trip in early March of 2010, and (2) removed all of his personal properties (including a motor vehicle) without a court order.[4]

Through this litigation, Montgomery seeks to obtain (1) damages, (2) a declaration from the Court that his construction liens are legally superior to the claims of Freddie Mac and others, and (3) authority to initiate his own foreclosure action in order to satisfy the construction liens.

On August 25, 2003, Rudolph, along with Bryant Lowery, obtained a separate mortgage for $366,000 against the West Bloomfield property. This mortgage was recorded on March 1, 2004, and executed in favor of Mortgage Electronic Registration Systems, Inc. as the nominee for the mortgage

---

[3]According to documentation which was attached to Montgomery's complaint in Case No. 10-11729, the construction liens are for $17,237.23 and $97,427.78 against the Southfield property and the West Bloomfield property, respectively.

[4]Montgomery attached to his complaint a copy of the Southfield Police Department report that had been initiated by him and authored by law enforcement officer, Rolando Rivera. This report characterized the removal of the contents from Montgomery's home as a "forced entry / burglary."

3

lender, Merrill Lynch Credit Corporation. Rudolph and Lowery defaulted on their mortgage loan by failing to make timely payments. The commencement of foreclosure proceedings followed. A sheriff's sale took place on March 2, 2010. The ownership interests in this property were ultimately conveyed to the U.S. Bank in the form of a quit-claim deed which bore the date of March 9, 2010.[5]

## II.

The Court first turns to the motion by the U.S. Bank for authority to intervene into this lawsuit as a matter of right. This motion is governed by Rule 24(a) of the Federal Rules of Civil Procedure, which provides that a court must permit intervention by anyone who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. 24(a)(2). In interpreting this statute, the Sixth Circuit requires an entity attempting to intervene as a matter of right to show that (1) the petition to intervene was timely filed; (2) the proposed intervenor possesses a substantial legal interest in the case; (3) the proposed intervenor's ability to protect its interest will be impaired without intervention; and (4) the existing parties will not adequately represent the proposed intervenor's interest. *Blount-Hill v. Zelman,* 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir.1999)). Every *Blount-Hill* element is mandatory, and a failure by the applicant to satisfy all of the factors requires a court to deny the motion for intervention. *Id.* (citing *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir.2005)).

The first *Blount-Hill* factor requires a showing that the intervention petition is timely. In an

---

[5] The parties acknowledge that the expiration of the statutory redemption period under Michigan law occurred on September 2, 2010.

effort to determine if the petition by the U.S. Bank satisfies the Sixth Circuit criteria, the Court looks to five non-dispositive factors under the "totality of the circumstances" standard:

(1) the point to which the lawsuit has progressed;
(2) the purpose for which intervention is sought;
(3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case;
(4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and
(5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* at 284 (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir.1990)). Although Montgomery attempts to proffer several theories upon which he believes that the petition to intervene by the U.S. Bank is untimely, the Court believes that only two of them appear to be reasonably intelligible and warrant any further discussion.[6]

First, Montgomery argues that, inasmuch as the redemption period had not expired when the U.S. Bank filed its motion, it was not "the real party in interest." Thus, in his opinion, the U.S. Bank had no legitimate basis upon which to seek an intervention into this lawsuit. Montgomery's argument must be rejected because the entire premise underlying Fed. R. Civ. P. 24 is to allow an intervention by those parties who have an interest in the litigation, but may not be as directly impacted by the outcome as one of the named litigants. *See e.g., Providence Baptist Church v. Hillandale Committee,*

---

[6]Montgomery's responsive pleading in opposition to the intervention request cites several statutes (including Fed. R. Civ. P. 17(a)(1)(E) and Mich. Comp. Laws §§ 565.432, 565.433 and 451.404), both of which relate to the duties of a trustee over an express trust and/or a so-called trust mortgage. Nevertheless, Montgomery has failed to establish that any of the issues in this case arise out of an express trust, or that the properties at issue here are encumbered with a trust mortgage. To the extent that his allegations of untimeliness depend on these issues, which remain wholly undeveloped, Montgomery's request to deny the intervention motion on these grounds is denied.

*Ltd.* 425 F.3d 309, 315 (6th Cir. 2005) ("an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing.").

Furthermore, Montgomery has not raised any legitimate challenge to the validity of the U.S. Bank's quit-claim deed to the West Bloomfield property. Yet, in the opinion of the Court, this document solidifies the U.S. Bank's status as an entity with a substantial interest in the outcome of the litigation even though, it may not be a "real party in interest"- as characterized by Montgomery.

The Court must also reject his second argument, in which he submits that the U.S. Bank should have attempted to intervene in April of 2010 when the lawsuit was first removed to this federal court. To support this contention, he points out that the same law firm (i.e., Trott & Trott), which filed the removal notice and handled the quit-claim deed when it was first assigned to the U.S. Bank in March of 2010, now represents the assignee of that instrument. Based on these facts, Montgomery submits that Trott & Trott should have notified its client of this lawsuit when this civil action was first removed, thereby allowing the U.S. Bank to intervene a few months earlier. Nevertheless, the role of the Court here is to judge the timeliness of the intervention effort based on the actions that were taken by the presumptive intervenor rather than to assess the conduct of its counsel. Viewing the record from this perspective, the Court finds that Montgomery has not offered any persuasive evidence with which to contradict the U.S. Bank's representation that it first learned of this lawsuit several months after it had been filed. With recognition that minimal discovery or other progress had occurred in the case when the motion to intervene was initially filed, the Court finds that the U.S. Bank's attempt to intervene was timely, and will not cause any measurable prejudice to Montgomery or the other Defendants. The U.S. Bank has an important and unique interest in the West Bloomfield

property, and a denial to its efforts to intervene on timeliness grounds would serve no legitimate purpose here.

The Court also concludes that the other *Blount-Hill* factors must be resolved in favor of allowing the U.S. Bank to intervene. As noted earlier, it possesses a substantial legal interest in the case inasmuch as it currently owns the West Bloomfield property by way of a quit claim deed (dated March 9, 2010). Under Michigan law, the only way that the U.S. Bank could have been divested of its interest in the West Bloomfield property is if Rudolph, Lowery, or some other interested party had redeemed the property prior to the expiration of the redemption period, which has not been shown to have occurred. *See* Mich. Comp. Laws § 600.3236. It is also apparent to the Court that, in the absence of such an intervention, neither the U.S. Bank nor any other named party will be able to adequately protect its interests during this litigation. In this regard, the record indicates that Montgomery seeks to enforce a lien against the West Bloomfield property which he claims is legally superior to the interests of the U.S. Bank and - in so doing - asks the Court to (1) quiet the title in his favor, and (2) issue declaratory and injunctive relief that would, among other things, enable him to foreclose on his lien. If Montgomery were successful, his victory would cast a significant doubt upon the legitimacy of the U.S. Bank's title in the West Bloomfield property. Depriving the U.S. Bank of an opportunity to challenge this result would offend basic notions of due process and fairness, especially where  - as here  - none of the other named Defendants appear to have any interest in the West Bloomfield property. Because Fed. R. Civ. P. 24(a) and all of the *Blount-Hill* factors weigh in favor of the U.S. Bank, the Court will grant the pending request to intervene into this lawsuit.

The Court has also been asked by the U.S. Bank to dismiss all of Montgomery's claims that pertain to the West Bloomfield property. Although it requests dismissal of his lawsuit on several

grounds, the Court finds one argument to be dispositive, i.e. the bank's contention that Montgomery's claimed construction lien is legally invalid. To impose an enforceable construction lien against a property, a claimant (such as Montgomery) must show that he has substantially complied with the basic requirements of Mich. Comp. Laws. §§ 570.1101 - 570.1302. However, as the U.S. Bank correctly argues here, Montgomery has neglected to proffer any evidence that (1) he had a written contract with Rudolph and/or Lowery which covered the improvements as required by § 570.1114, and (2) he was licensed to perform any of the identified improvements to a residential dwelling, as required by § 570.1114 and § 339.2412.[7] With reference to the first argument, § 570.1114 provides that "[a] contractor does not have a right to a construction lien on the interest of an owner . . . in a residential structure *unless the contractor has provided an improvement to the residential structure pursuant to a written contract between the owner . . . and the contractor . . . .*" (emphasis added). Yet, Montgomery has failed to provide any documentary evidence that would support his belief that § 570.1114 has been fully satisfied. Although ¶ 41 of his complaint makes reference to "an agreement" to perform emergency repairs to the West Bloomfield Property, he neither pleads nor proves that the "agreement" was in writing. Moreover, Montgomery's opposition papers offer no substantive response to this argument. Inasmuch as the record is devoid of evidence that Montgomery has complied with this aspect of the Michigan Construction Lien Act, the request by the U.S. Bank to dismiss Montgomery's claims against the West Bloomfield property on this basis must be granted.

---

[7]U.S. Bank also argues that Montgomery failed to provide evidence that his claim of a lien included proof that he served Rudolph and/or Lowery with a "notice of furnishing," as required by §§ 570.1111(4) and 570.1109. However, such a requirement is not applicable where, as it appears here, the person who performs the improvements to the property does so pursuant to an agreement directly with the owners.

The Court reaches a similar conclusion in light of Montgomery's failure to satisfy the requirement in § 570.1114(b) which specifies that his written agreement with the owners of the West Bloomfield property must contain a provision which (1) specifies that the contractor "is licensed" and (2) actually identifies his relevant license number. Indeed, Mich. Comp. Laws § 339.2412(1) prohibits a person, such as Montgomery, from obtaining relief unless there is evidence that he was licensed as a contractor during his performance of the contract which gave rise to the claimed construction lien.[8] Although Montgomery claims that this statutory provision does not apply to "laborers," he provides no case law or any other authority to support his interpretation of the statute. Inasmuch as Montgomery has not established the existence of a valid construction lien to cover his alleged work endeavors, this effort by him to recoup nearly $100,000 through a foreclosure on the West Bloomfield property must be rejected. To grant relief to him under these circumstances would be inconsistent with Michigan law. For all of these reasons, the motion by the U.S. Bank to dismiss Montgomery's lawsuit relating to the West Bloomfield property is granted in its entirety.

III.

Next, the Court has been presented with a request by three of the Defendants (Evergreen Woods, Kramer-Triad, and Michael Kellum to dismiss this lawsuit on two different grounds. First, they argue that a dismissal is appropriate in light of Montgomery's failure to engage in any discovery

---

[8]Section 339.2412(1) provides that "[a] person or qualifying officer for a corporation or member of a residential builder or residential maintenance and alteration contractor shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract."

9

over an eight-month period. More specifically, they contend that Montgomery has neglected and/or refused to answer their interrogatories, file any initial disclosures, or appear for a scheduled deposition. As to the deposition, they note that Montgomery appeared at the building where the deposition was scheduled to be conducted, but refused to submit himself to a metal detector, despite having a violent criminal history and applying for multiple permits to carry a concealed weapon.  According to the Defendants, Montgomery has not appeared for a deposition since that time.

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides that if a party fails to obey a discovery order, the court may "issue further just orders [which] may  include:  . . . dismissing the action or proceeding in whole or in part . . . ." In fashioning an appropriate remedy for such a violation, the Court is encouraged to consider the following factors, none of which are dispositive: whether (1) the failure is due to willfulness, bad faith, or fault, (2) the opponent sustained any prejudice, (3) the party was warned that failure to cooperate could lead to the imposition of a sanction, and (4) less drastic sanctions were first considered or imposed.  *Regional Refuse Systems, Inc. v. Inland Reclamation Co.,* 842 F.2d 150, 154-55 (6th Cir. 1988) (superseded by statute on other grounds).

After applying the *Regional Refuse* factors here, the Court concludes that a dismissal of the complaint is not warranted. Although the Court does not condone any attempt by Montgomery to avoid his discovery obligations, the Defendants have not shown that he has committed the kind of dilatory, evasive, or non-responsive conduct that would justify the imposition of the most extreme sanction (i.e., dismissal).  The Defendants have acknowledged that Montgomery did appear in person for a deposition on one occasion but refused to comply with a building security measure when he was asked to proceed through a metal detector.  Although this behavior strikes the Court as puzzling, it does not provide a basis for dismissing the entire lawsuit, particularly where the only other alleged omissions are in failing

to answer interrogatories or file initial disclosures. Additionally, the Defendants have not persuaded the Court that Montgomery has necessarily acted with wilfulness or bad faith, or explained how, if at all, they have been prejudiced by his alleged failings to date. While the Court can imagine that Montgomery's failures have led to the expenditure of unnecessary time, money, or resources, it is the Defendants' burden to support their request for sanctions with evidence.

Finally and despite their dissatisfaction with Montgomery's conduct, the Defendants have not proffered any motion that is designed to compel compliance for failing to satisfy his minimum discovery obligations under Fed. R. Civ. P. 37(a). In light of the Defendants' inability to satisfy the requirements of Fed. R. Civ. P. 37(b) and *Regional Refuse, supra*, their request for a dismissal of Montgomery's entire lawsuit on this basis must be, and is denied. Notwithstanding, Montgomery is advised that any continued failure by him to engage in a good faith discovery effort may result in the imposition of sanctions, the most extreme of which may include a dismissal of his lawsuit with prejudice.

The Defendants have argued in the alternative that this case must be dismissed under Fed. R. Civ. P. 12(b)(6) because the complaint does not allege any wrongdoing on their part. On this point, they note that (1) Evergreen Woods was merely the condominium community where the events about which Montgomery complains occurred, (2) Michael Kellum is simply a board member of Evergreen Woods, and (3) Kramer-Triad merely manages the condominium complex. Further, they collectively claim that the extent of their involvement was to comply with a court order which authorized the local police to enter the facility where Montgomery was a tenant in order to execute the foreclosure. According to them, neither Kellum nor any of the employees of the other two Defendants ever stepped foot into Montgomery' condominium. Furthermore, it is their position that this lawsuit should be dismissed

11

because the remaining disputed issues in this litigation exist between Montgomery, the mortgage lender, and the local police.

Fed R. Civ. P. 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief [in order to] give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). While this pleading standard does not mandate "detailed" factual allegations, it does require more than the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555. Therefore, a plaintiff must offer more than "an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Generally, when considering a motion to dismiss, the Court must construe the complaint in a light that is most favorable to the plaintiff, accept his factual allegations as being true, and draw all reasonable factual inferences in the plaintiff's favor. *Tipton v. Corr. Med. Services, Inc.,* No. 08-421, 2009 WL 2135226 (W.D. Mich. July 15, 2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims are capable of surviving a Rule 12(b)(6) motion only if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level . . . on the assumption that all [of] the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555.

Here, construing the complaint in a light that is most favorable to Montgomery reveals the following allegations: (1) Evergreen Woods has a nearly $2,000 financial interest in the Southfield

12

property arising from an arrearage in condominium assessments - an interest which is allegedly subordinate to his construction lien, (2) Kramer-Triad and Kellum authorized his 1986 Pontiac Fiero automobile to be towed from the Southfield property based on their belief that the vehicle was improperly parked in the condominium lot, and (3) all three of these Defendants conspired with others to forcibly enter the Southfield property without a court order and to evict him from the premises. These factual allegations have led Montgomery to accuse these Defendants of (1) violating the Michigan Penal Code, Mich. Comp. Laws § 750.110a by evicting him from the Southfield property without due process of law, (2) being jointly liable for more than five-million dollars in damages for their allegedly unlawful interference with his interest in the Southfield property, and (3) engaging in unlawful, unfair, unconscionable, or deceptive practices in the conduct of trade.

When judging the complaint based on the standards articulated in *Iqbal* and *Twombly, supra*, the Court finds that the request for dismissal by these Defendants is justifiable. Even when accepting all of Montgomery's allegations as true, the complaint does not identify a violation of any applicable law. For instance, in his attempt to hold the Defendants responsible for contravening §750.110a of the Michigan Penal Code, Montgomery provides no factual allegations which would plausibly suggest that the Defendants broke and entered his dwelling and committed a felony or a misdemeanor while inside (or intended to do so), as required by § 750.110a. More importantly, even if he had succeeded in making such a showing, Montgomery has proffered no legal authority to establish that a violation of this criminal statute gives rise to a private right of action or other form of civil liability between private litigants.

Although Montgomery has accused these Defendants of unfair, unconscionable or deceptive trade practices, in violation of Mich. Comp. Laws §§ 445.901-445.922 (also known as the Michigan

13

Consumer Protection Act ("MCPA")), a cursory reading of this statute reveals that it has no applicability here. The MCPA is designed to prohibit businesses from engaging in unsavory practices with regard to goods and services that are offered to Michigan consumers. *See generally,* Mich. Comp. Laws § 445.903(1) (declaring that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful."); Mich. Comp. Laws § 445.902(g) (defining "trade or commerce," as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity."). Here, Montgomery has failed to respond to the Defendants' allegations, thus giving the Court no guidance as to his theory of liability. But even assuming he can proffer a reasonable argument as to why his dealings with the Defendants fall within the ambit of the MCPA, Montgomery's complaint has neither identified the provisions of § 445.903 that he believes have been breached nor provided a plausible set of allegations from which the Court could assess his entitlement to relief. Because his complaint has failed to state a claim upon which relief can be granted against Evergreen Woods, Kramer-Triad, and Michael J. Kellum, their joint request to dismiss the lawsuit against them must be, and is, granted.

In light of this resolution, the Court declines to resolve Montgomery's two near-frivolous motions which relate to Evergreen Woods. In those pleadings, Montgomery seeks the entry of a summary judgment and the imposition of sanctions against this Defendant for what he characterizes as its egregious conduct in litigating this case under a false name; namely, i.e. Evergreen Woods Condominium Association – when its true legal name is Evergreen Woods Association. Although the Court seriously doubts the substantive propriety of Montgomery's request for relief, these motions will

be denied for reasons of mootness since Evergreen Woods has been dismissed from the litigation, as indicated *supra*.

## IV.

Finally, Montgomery has asked the Court for permission to amend the complaint in order to supplement his original claims with alleged violations of federal law, and to add new Defendants, including former White House Chief of Staff Rahm Emanuel; Deputy Chief of Staff to President Barack H. Obama, Jim Messina, as well as several executive officers with the law firm of Trott & Trott; and other entities who may or may not have any reasonable connection to this lawsuit.

Under Fed. R. Civ. P. 15(a)(2), a court may "freely give leave [to amend a pleading] when justice so requires." This rule reaffirms the principle that cases should be tried on their merits "rather than [on] the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)). Nevertheless, a court is entitled to consider various factors that weigh in favor of denying a leave to amend, such as undue delay, bad faith, or prejudice to the opposing party. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). If a proposed amendment would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may also disallow the modification on the ground that it would be futile. *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382 (6th Cir.1993).

After carefully examining the record, the Court concludes that Montgomery's request to amend his complaint must be denied. It appears that Montgomery has brought this proposed amendment in bad faith, inasmuch as the newly-pled claims have little coherence or bearing on the essential subject-matter of this litigation. For instance, the proposed amended complaint accuses several new Trott &

Trott personnel (namely David Trott, Kathleen Hommel Trott, Ellen L. Coon, and Marcy J. Ford) of committing professional malpractice against him, when it is clear from the record that these Defendants never maintained any attorney-client relationship with Montgomery or owed him a legal duty. *See e.g., Mitchell v. Dougherty,* 249 Mich. App 668, 676 (2002) (noting that the first step in establishing a legal malpractice claim is to prove the existence of an attorney-client relationship).[9] The complaint also contains incomprehensible language such as the following: "[Each of the Defendants] have all engaged in what the United States Whitehouse [sic] has called 'Normal Political leadership . . . . The leaders of parties have long had an interest in ensuring that supporters didn't run against each other in contested primaries." (Proposed Amended Complaint ¶ 116). Moreover, Montgomery accuses Rahm Emmanuel, Jim Messina, and the Trott & Trott executives of violating 42 U.S.C. § 1983, 18 U.S.C. §§ 594,[10] 595[11] and a host of other inapplicable statues of conspiring with the original Defendants to violate his civil rights and force him out of the Southfield property. However, his complaint neither establishes the details of the alleged conspiracy nor identifies the manner in which these Defendants were personally involved therewith. Furthermore, Montgomery has filed no substantive pleading in connection with his motion, and has done nothing to explain why these amendments would not be futile.

Finally, as to the only remotely valid cause of action ( i.e. the alleged violations of the Federal

---

[9] Even if such an attorney-client relationship did exist, Montgomery's proposed amended complaint does nothing to explain how a fiduciary duty was breached.

[10] This statute precludes the intimidation of voters in federal elections, by providing that: "(w)hoever intimidates, threatens, coerces, or attempts to intimidate, threaten, or coerce, any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose. . . shall be fined under this title or imprisoned not more than one year, or both."

[11] This provision prohibits administrative employees from interfering with federal nominations and elections.

Protecting Tenants at Foreclosure Act of 2009), Montgomery's proposed amended complaint falls short because no facts have been pled which plausibly suggest that he is a bona fide tenant with a legally valid lease agreement. *See* Federal Protecting Tenants at Foreclosure Act of 2009 (Pub. L. 111-22, title VII, § 702[a], 123 U.S. Stat. 1660-1661) (noting that a lease or tenancy shall be considered bona fide "only if (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant; (2) the lease or tenancy was the result of an arms-length transaction; and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.")).

In sum, because the proposed amended complaint was brought in bad faith and cannot withstand a challenge on the basis of futility, Montgomery's request to amend must be, and is, denied.

V.

Therefore, for the reasons that have been stated above, (1) Montgomery's motions for sanctions, the entry of a summary judgment, and for an amendment of the complaint are denied; (2) U.S. Bank's motions to intervene and to dismiss are granted; (3) Motions to dismiss by Evergreen Woods, Kramer-Triad, and Michael J. Kellum are granted; and (4) Freddie Mac's motion to extend time is denied.

IT IS SO ORDERED.

Date: October 27, 2011     s/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
U.S. District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 27, 2011.

s/ Kay Doaks<br>
Case Manager