UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE MONTGOMERY,

       Plaintiff,                         CIVIL ACTION NO 10-11729

      v.                              DISTRICT JUDGE JULIAN ABELE COOK

FREDDIE MAC,                    MAGISTRATE JUDGE MARK A. RANDON
CITIMORTGAGE, and
GTJ CONSULTING, LLC.

       Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT (DKTS. 72, 73 & 75)**

      This case involves a claim of wrongful eviction, removed from state court. Plaintiff Duane Montgomery ("Plaintiff"), acting *pro se*, alleges that Defendants Freddie Mac, CitiMortgage ("Citi") and GTJ Consulting, LLC ("GTJ") (collectively referred to as "Defendants") violated Mich. Comp. Laws § 600.2918 (anti-lockout statute), Mich. Comp. Laws § 600.2920 (replevin statute) and Mich. Comp. Laws § 445.901 (consumer protection act). He also alleges that Defendants unlawfully converted his property and intentionally caused him emotional distress. Plaintiff's claims arise from Defendants' alleged unlawful entry into his rented condominium, replacement of the locks and removal of his personal property.

      Defendants' motions to dismiss and/or for summary judgment are pending (Dkts. 72, 73 and 75). Plaintiff filed a response to the motions on May 24, 2012 (Dkt. 86); Defendants Citi and GTJ filed replies on June 8, 2012 (Dkts. 92, 93). Oral argument was heard on June 12, 2012. For the reasons set forth below, this Magistrate Judge **RECOMMENDS** that Defendants'

motions be **GRANTED** and that Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**.

## I. FACTS

### A. *Mortgage Proceedings*

On June 24, 2002, Ninevah Rudolph secured a $114,000 loan to finance the purchase of real property located in Southfield, Michigan ("the Property") (Dkt. 72; Ex. A). The mortgage was originally completed with Mortgage 1, but was subsequently assigned to ABN AMRO Mortgage Group, Inc. on June 28, 2002 (Dkt. 72; Ex. B). Defendant Citi acquired the mortgage through a merger agreement with ABN AMRO. Rudolph defaulted on the mortgage, and the Property was foreclosed upon and sold at a Sheriff's sale on January 5, 2010 (Dkt. 73; Ex. 2). Plaintiff alleges that he was a tenant lawfully residing in the Property.

### B. *Plaintiff's Complaint*

Plaintiff's Complaint initially involved two properties: the Property and another located in West Bloomfield, Michigan. However, the Court dismissed Plaintiff's claims related to the West Bloomfield property on November 10, 2011 (Dkt. 50).

On March 7, 2010, Plaintiff says he left the Property for a business trip (Dkt. 1; Ex. A). It is undisputed on March 8, 2010, GTJ entered the Property without a court order, changed the locks on the front door, and winterized the unit (Dkt. 1; Ex. A).[1] GTJ also left a flyer on the front door indicating that the Property had been winterized.

Plaintiff returned to the Property on March 12, 2010 and found that the locks had been changed, and his car towed (Dkt. 1; Ex. A). Plaintiff called the police; he was referred to the law firm of Trott & Trott, which immediately gave him the code to the lock box. Once inside,

---

[1] GTJ claims that its entry was lawful because the property had been abandoned.

Plaintiff alleges he discovered that his personal property – valued at over $6,000,000 – had been removed.

## II. ANALYSIS

*A. Standards of Review*

### 1. Motions to Dismiss

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint – not to decide the merits of the case. It is well established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim. Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 566 U.S. 662, 678-679 (2009). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id.* The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 566 U.S. at 678. The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A *pro se* pleading must be liberally construed and be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *See Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir.1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief ..." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard is liberal, it does require more than the bare assertions of legal conclusion. *See Lillard v. Shelby Co. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

### 2. Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to

any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Discussion

#### 1. Plaintiff's Anti-Lockout Claims

Plaintiff alleges that Defendants' entry into the Property and replacement of the locks violated Michigan's anti-lockout statute, Mich Comp. Laws § 600.2918. Defendants argue that Plaintiff cannot recover under Mich. Comp. Laws § 600.2918 because: (1) he does not allege that

he was ejected or detained from the Property using force or threat of force, and (2) there is no genuine of issue of fact that Plaintiff was a tenant of the Property. Both arguments are well-taken.

Mich. Comp. Laws § 600.2918(1) requires the use of "force." "[A]ny person who is ejected or put out of any lands or tenements in a *forcible* and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages" (emphasis added). In *Shaw v. Hoffman*, 25 Mich. 162, 169 (1872), the Michigan Supreme Court explained:

> [T]he entry or detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out; in other words, the force contemplated by the statute is not merely the force used against or upon the property, but force used or threatened against **persons** as a means of or for the purpose of expelling or keeping out the prior possessor (emphasis added).

This rule for determining the circumstances that constitute forcible entry or detainer was reaffirmed by the Michigan Supreme Court in *Patterson v. Dombrowski*, 337 Mich. 557 (1953).

Plaintiff did not allege that Defendants used or threatened force necessary to state a claim under § 2918(1). Plaintiff alleges that the locks were changed on Monday, March 8, 2010. There is no allegation that Plaintiff was physically present during the repossession, or that any Defendant used force or the threat of force to remove Plaintiff from the Property or to bar his reentry. Given that Plaintiff was away on a business trip, it would have been impossible for him to have any physical interaction with Defendants during the lockout. Further, no force was used or threatened to keep Plaintiff out of the Property. After Plaintiff discovered the locks to the Property had been changed, he was immediately given the lockbox code. Under these

circumstances, Plaintiff cannot sustain a claim under § 2918(1) of Michigan's anti-lockout statute.

Plaintiff also claims unlawful interference with his property under Mich. Comp. Laws § 600.2918(2), which provides that "[a]ny tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater..." Defendants argue that Plaintiff does not have standing to sue under Mich. Comp. Laws § 600.2918(2), because he has failed to produce any evidence that he was a tenant of the Property (Dkt. 75 at 8).

Only a tenant can bring a claim under Mich. Comp. Laws § 600.2918(2). *See Eberline v. Nat'l City Mortg., Inc.*, No. 292022, 2011 Mich. App. LEXIS 1412 (Mich. Ct. App., July 28, 2011). Michigan case law has held that for the purpose of this statute, a tenant is an individual or group of individuals who pay consideration to occupy rental property. *See Nelson v. Grays*, 209 Mich. App. 661, 665 (1995). Mere possession of property is insufficient to establish a landlord-tenant relationship with the property owner. *Eberline*, 2011 Mich. App. LEXIS 1412, at *10.

Plaintiff's bare assertion that he was Rudolph's tenant is insufficient to sustain a claim under Mich. Comp. Laws § 600.2918(2). Plaintiff alleges he was "the tenant whom [sic] is in possession of the property in 24261 Evergreen Road Southfield, MI..." (Dkt. 1; Ex. A). However, there is no evidence that Rudolph and Plaintiff ever entered into a landlord-tenant relationship. Defendants requested, and Plaintiff agreed to provide, a copy of all agreements, including any lease agreement, that he had with Rudolph concerning the Property; Plaintiff failed to produce a lease agreement, rent receipt, cancelled check written to Rudolph, or anything else to substantiate

his claim of tenancy. Plaintiff says he was allowed to live at the Property in exchange for repairs that he made, but failed to provide any proof of these alleged repairs (Dkt. 75; Ex. 7).

After the hearing on Defendants' motions, the Court gave Plaintiff another opportunity to submit any documents in his possession that demonstrate he was a tenant of the Property during the relevant time-period. On June 19, 2012, Plaintiff submitted some utility bills for the Property (Dkt. 95; Ex. 1). These bills, however, are in the name of a company – OVNI USA, LLC – and not in Plaintiff's name. Plaintiff also submitted a document from Oakland County indicating that Plaintiff is the "owner" of OVNI USA, LLC (Dkt. 95; Ex. 2). However, these documents, standing alone, are insufficient to establish that Plaintiff was a tenant of the Property. At best, these documents indicate that OVNI USA, LLC may have been a tenant of the Property, but even that is unclear.

Moreover, in a Debtor's Examination that was taken on April 5, 2011, Plaintiff testified under oath that his address was 2245 South Edsel, Detroit, Michigan (Dkt. 73; Ex. I). He further testified that he had lived there for "at least five years," indicating that he had been living at the Edsel address at the time of the alleged unlawful eviction in March 2010. When asked whether he resided at the Property, Plaintiff stated that he may have on occasion, but could not recall the last time he resided there (Dkt. 73; Ex. I). Thus, Plaintiff's sworn testimony during the Debtor's Examination contradicts any assertion that he was residing at the Property. In the absence of evidence supporting Plaintiff's claim that he was a "tenant," Mich. Comp. Laws § 600.2918(2) does not apply.

Plaintiff's claims under both Mich. Comp. Laws § 600.2918(1) and (2) should be dismissed.

### 2. Plaintiff's Conversion Claim

Plaintiff next argues that his personal property – which he values at more than $6 million – was unlawfully removed from the Property, and that he is entitled to damages for conversion. Plaintiff alleges that he returned to the Property on March 12, 2010 and "discovered that the locks [on the Property] had been changed" (Pl's Comp. ¶ 49-50). After obtaining the lock box code and entering the Property, Plaintiff says he "immediately discovered that the contents...were gone" (Pl's Comp. ¶ 61). Plaintiff provided Defendants with a spreadsheet of the items that were allegedly taken, outlining the price, quantity, and total cost of each item (Dkt. 75; Ex. 5). The list declares damages totaling $6,844,572 for missing items that include clothing, furniture, home entertainment systems, kitchen supplies, two firearms, computer equipment, and election materials (computer software) (Dkt. 75; Ex. 5).

Defendants argue that Plaintiff's conversion claim should be dismissed because Plaintiff has not provided supporting evidence that any of his personal property was removed from the Property. Defendants also argue that Plaintiff's claim is barred by judicial estoppel. Defendants' arguments are well-taken.

Mich. Comp. Laws § 600.2920 states that "a civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention..." Although Plaintiff claims a loss of over $6 million in personal items, he has failed to provide any evidence that demonstrates his personal property was actually removed from the Property. Specifically, Plaintiff failed to produce evidence, such as receipts of purchase, bank records, photographs, credit card statements or insurance records, that demonstrate these items ever existed. When

deposed and questioned by Defendant GTJ, Plaintiff was only able to provide vague descriptions of the personal property he claims was removed (*See* GTJ's MSJ, Ex. 7 at 54-72). Thus, Plaintiff has failed to provide sufficient evidence to support his conversion claim.

Moreover, even if Plaintiff could prove the existence and removal of his personal items from the Property, this Magistrate Judge agrees with Defendants that Plaintiff's conversion claim is barred by judicial estoppel. Plaintiff filed for bankruptcy on October 30, 2008. In his bankruptcy filings, Plaintiff claimed to have just $600 in personal property (Dkt. 72, Ex. J). On January 26, 2010, Plaintiff filed amended bankruptcy schedules that confirmed his previous claim of $600 in personal property (Dkt. 72; Ex. K). Plaintiff did not further amend his bankruptcy schedules to reflect either the personal property he claims was unlawfully converted from the Property or his filing of the Complaint in this case.

Leniency has not been the watchword that characterizes the Sixth Circuit's treatment of judicial estoppel claims in the bankruptcy context. In *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), the court affirmed summary judgment against a plaintiff who alleged sexual harassment against her employer, because the plaintiff did not list her cause of action on bankruptcy schedules. She filed her lawsuit one day after her Chapter 13 plan was approved by the bankruptcy court and later filed an amended schedule to reflect the cause of action. But the Sixth Circuit dismissed the plaintiff's attempts at amending her bankruptcy schedule as inadequate to correct her mistake. *White*, 617 F.3d at 474-475.

*White* represents a harsh application of the judicial estoppel doctrine, but its lessons apply here. Judicial estoppel is an equitable doctrine that "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving

-10-

success on one position, then arguing the opposite to suit an exigency of the moment." *Longaberger Co. v. Kolt*, 586 F.3d 459, 470 (6th Cir.2009) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217–18 (6th Cir.1990)). The doctrine applies where a party is: "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Ibid*. (internal quotation marks and citations omitted). Although the application of the doctrine is not "reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (1982)), the Supreme Court outlined factors that typically inform the courts' decision whether to apply the doctrine in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

Courts must use caution in applying the doctrine "to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne Indus., Inc.*, 911 F.2d at 1218. The Sixth Circuit has held that judicial estoppel does not apply to cases where the complained-of misconduct amounts to

"nothing more than mistake or inadvertence." *Browning v. Levy*, 283 F.3d 761,776 (6th Cir.2002). Although the Sixth Circuit has determined that one's failure to disclose an asset in a previous bankruptcy proceeding qualifies as a "position" of the party in the previous proceeding, *See Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir.1988), where the debtor lacks knowledge of the factual basis of the undisclosed claims or where the debtor has no motive for concealment, non-disclosure is inadvertent and judicial estoppel should not apply. *Browning*, 283 F.3d at 776 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999)). Similarly, courts should not apply judicial estoppel to efforts to enforce claims omitted from the bankruptcy petition's schedule of assets where the debtor notified the trustee and all involved parties of the existence of such claims during the pendency of the bankruptcy case and where, therefore, it is highly unlikely that the omission in the petition was intentional. *See Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898–99, 898 n. 1 (6th Cir.2004). Finally, the doctrine does not apply to claims filed long after the bankruptcy claims have been discharged. *See Sharp v. Oakwood United Hospitals*, 458 F.Supp.2d 463, 472–73 (E.D. Mich.2006) (refusing to apply equitable estoppel doctrine to a wrongful-death action that was not pending or even contemplated during the pendency of the bankruptcy case). None of these circumstances apply here.

In *White*, the Sixth Circuit set forth the following criteria in a bankruptcy-specific context:

> [T]o support a finding of judicial estoppel, we must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff]'s omission did not result from mistake or inadvertence. In determining whether [the plaintiff]'s conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the

> undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at [the plaintiff]'s "attempts" to advise the bankruptcy court of her omitted claim.

*White*, 617 F.3d at 478.

Applying these factors to Plaintiff's case, this Magistrate Judge finds that judicial estoppel bars Plaintiff's conversion claim. The Bankruptcy Code requires a debtor to file a "schedule of assets and liabilities, a schedule of current income and current expenditures," 11 U.S.C. § 521(a)(1)(B)(I), including contingent and unliquidated claims, and to supplement such disclosure during the pendency of the bankruptcy case. *In re Coastal Plains, Inc.*, 179 F.3d at 208. The integrity of our bankruptcy system "depends on a full and honest disclosure by debtors of all their assets." *In re Coastal Plains, Inc.*, 179 F.3d at 208.

Plaintiff failed to amend his most recent bankruptcy schedules, filed on January 26, 2010, to account for the supposed drastic increase in personal property value he claimed to have received by March 8, 2010. Moreover, like *White*, Plaintiff failed to either amend his schedules to account for this case or disclose the action to the bankruptcy trustee. While it is unclear whether the bankruptcy court adopted Plaintiff's position that he had $600 in personal property, the bankruptcy court did not explicitly reject Plaintiff's prior position. Furthermore, no evidence suggests that Plaintiff's prior position resulted from mistake or inadvertence.

When the bankruptcy court discharged Plaintiff's debts, it presumably relied on his representation that he had no assets other than the $600 of property listed on his sworn schedule of assets. By suing Defendants, Plaintiff is now asserting a contrary position – *i.e.,* that he had over $6 million worth of items in the Property. And by doing so, Plaintiff might well be

usurping the right of a bankruptcy trustee to bring causes of action belonging to the bankruptcy estate. *See Waldschmidt v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988) ("It is well settled that the right to pursue causes of action formerly belonging to the debtor ... vests in the trustee for the benefit of the estate." (quoting *Jefferson v. Mississippi Gulf Coast YMCA*, 73 B.R. 179, 181–82 (S.D.Miss.1986))).

For these reasons, Plaintiff's conversion claim should be dismissed with prejudice.

### 3. Plaintiff's Emotional Distress Claim

Plaintiff alleges a claim for intentional infliction of emotional distress ("IIED") damages, "as authorized under Mich. Comp. Laws. 600.2918" (Pl's Br. ¶3). Defendants argue that Plaintiff's claim must fail, because: (1) Mich. Comp. Laws § 600.2918 does not authorize a claim for IIED, and (2) Plaintiff has failed to plead or show sufficient facts to support a claim for IIED. This Magistrate Judge agrees.

Mich. Comp. Laws § 600.2918 contains no language that would permit Plaintiff's emotional distress claim. Even if Plaintiff had cited proper authority to authorize his claim, it fails for lack of evidence. When asked to provide any health care records that may support his claim for IIED through a document request, Plaintiff simply stated: "ok, I will provide" (Dkt. 72, Ex. E, Resp. Req. Pro. #15). Plaintiff has yet to provide any such medical records. Moreover, to support a claim for IIED, a plaintiff must provide evidence that "[t]he conduct complained of [is] 'so outrageous in character, and is extreme in degree, as to go beyond all possible bounds of decency, and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577 (2004) (quoting *Graham v. Ford*, 237 Mich. App. 670, 674 (1999)). Given Plaintiff's failure to meet this high standard, and the dearth of

supporting evidence, Defendants are entitled to summary judgement and Plaintiff's IIED claim should be dismissed with prejudice.

### 4. Plaintiff's Consumer Protection Act Claim

Plaintiff cites Mich. Comp. Laws § 445.902 and Mich. Comp. Laws § 445.911 for his allegation that Defendants breached § 445.901 *et seq.* of the Michigan Consumer Protection Act (MCPA"). Defendants correctly argue that the MCPA is not applicable.

This Court reasoned, in its Order dismissing Plaintiff's MCPA claim against Evergreen Woods, Kramer-Triad, and Michael J. Kellum (Dkt. 50 at 14), that:

> The MCPA is designed to prohibit businesses from engaging in unsavory practices with regard to goods and services that are offered to Michigan consumers . . . [E]ven assuming [Plaintiff] can proffer a reasonable arguments to why his dealings with the Defendants fall within the ambit of the MCPA, Montgomery's complaint has neither identified the provisions of §445.903 that he believes have been breached nor provided a plausible set of allegations from whih the Court could assess his entitlement to relief. Because his complaint has failed to state a claim upon which relief can be granted . . . their joint request to dismiss the lawsuit against them must be, and is, granted.

Similarly, Plaintiff's MCPA claim against Defendants has no merit and should be dismissed with prejudice.

### 5. Plaintiff's Claim Under Michigan Penal Code § 750.110a

Plaintiff alleges that Defendants "violated the Michigan Penal Code 750.110a by evicting the Plaintiff from the Premises without due process of law" (Pl's Comp. ¶ 17). Defendant Freddie Mac argues that Plaintiff "has not shown this Court any facts in support of his allegations under § 750.110a . . ." (Freddie Mac's MSJ at 17). Freddie Mac further argues that Plaintiff "has not provided any legal authority showing there is a probate right of action or any other form of civil liability between private litigants for an alleged violation of this statute" (Freddie Mac's

-15-

MSJ at 17). Defendants are correct. Accordingly, Plaintiff's claim under Mich. Comp. Laws § 750.110a, the statute criminalizing breaking and entering and home invasion, should be dismissed with prejudice.

### 6. Plaintiff's Michigan Construction Lien Act Claims

Finally, Plaintiff's Complaint states that he seeks to quiet title under Mich. Comp. Laws §600.2935 apparently by enforcement of a construction lien under Mich. Comp. Laws §570.1118. (Dkt. 1; ¶¶ 64-65). This Court has already examined Plaintiff's construction lien as it pertained to the West Bloomfield property and concluded that the construction lien was "legally invalid" (Dkt. 50). The same analysis applies to the Property. Plaintiff has not provided any evidence that he had a written contract with Rudolph as required by Mich. Comp. Laws §570.1114 or that he was licensed to perform any of the improvements as required by Mich. Comp. Laws §570.1114 and §339.2412. Therefore, Plaintiff's attempt to quiet title through enforcement of his construction lien should be dismissed.

### *C. Plaintiff's Subsequent Motions are Moot*

Based on the above recommendations, this Magistrate Judge finds that Plaintiff's subsequently filed motions (Dkt. 103, Motion to Strike; Dkt. 104, Motion for Order to Appear at Trial) have been rendered moot. As such, those motions should be denied.

### III. RECOMMENDATION

For the reasons stated above, this Magistrate Judge **RECOMMENDS** that Defendants' motions to dismiss and/or for summary judgment (Dkts. 72, 73, and 75) be **GRANTED**. Plaintiff's motion to strike (Dkt. 103) and motion for order to appear at trial (Dkt. 104) be **DENIED AS MOOT** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2012

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, August 31,2012, by electronic and/or first class U.S. mail.*

s/Melody R. Miles
*Case Manager to Magistrate Judge Mark A. Randon
(313- 234-5540*